UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>J. GASTELO, et al.,<br><br>    Defendants. | Case No. CV 18-8450 CAS(JC)<br><br>~~(PROPOSED)~~<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO TAKE FURTHER ACTION |

## I. BACKGROUND AND SUMMARY

On September 27, 2018, plaintiff Jesse Washington, who is in custody at the California Mens Colony State Prison East ("CMC"), is proceeding *pro se*, and has been granted leave to proceed without prepayment of the full filing fee ("IFP"), filed a Civil Rights Complaint ("Complaint" or "Comp.") pursuant to 42 U.S.C. § 1983 ("Section 1983"). He alleges that the failure to provide him with religiously appropriate meals has violated his First Amendment right to free exercise of religion and sues the following CMC officials in unspecified capacities: (1) Warden J. Gastelo; (2) Community Resource Manager J. Bonnifield; (3) Dining Hall Correctional Officer (C/O) J. Stout; and unnamed CMC officials referenced as (4) C/O John Doe; and (5) Main Kitchen Food Manager Jane Doe.

1

The Complaint seeks monetary, declaratory, and injunctive relief. (Comp. at 3-3A).

As the Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

## II. THE COMPLAINT

The Complaint essentially alleges that between November 21, 2017 through March 17, 2018, plaintiff's First Amendment right to free exercise of religion was violated because plaintiff was deprived of Religious Meat Alternative ("RMA") meals which he needed to comply with the obligatory tenets of the Islamic Faith. (Comp. at 3A-3E, ¶¶ 1-19). More specifically and construed liberally, the Complaint alleges the following:

On November 24, 2015, while plaintiff was housed at the California State Prison in Corcoran, he was approved to receive RMA meals – a diet consistent with the obligatory tenets of the Islamic Faith – while housed at Corcoran and any other California State Prison. (Comp. at 2; Comp. at 3B, ¶¶ 2, 4). He received a CDCR-3030 – RMA Dietary Card reflecting such approval as of November 24, 2015. (Comp. at 3B, ¶ 3).

Between November 21, 2017 through October 1, 2018, CMC Warden Gastelo implemented a policy at the CMC requiring all new arrival inmates participating in sending institution RMA dietary programs to wait thirty (30) days before being placed onto the approved institutional RMA diet list at the CMC ("Gastelo Policy"). (Comp. at 3C, ¶ 12; Comp. at 4).

On November 21, 2017, plaintiff arrived at the CMC for permanent housing in possession of the previously approved RMA Dietary Card. (Complaint at 3B, ¶¶ 2, 3). On November 22, 2017, plaintiff was not provided with an RMA diet food tray for any meal even though he explained to unnamed Facility A dining hall officers at each such meal that he possessed the RMA Dietary Card from Corcoran and was eligible for the RMA Diet Program at the CMC. (Complaint at 3B, ¶¶ 2,

3). Plaintiff was told by one or more unspecified persons that he was not on the Institutional Approved Dietary List at the CMC. (Complaint at 3B, ¶ 5). For several days, even after he presented his RMA Dietary Card to Facility A dining hall officers, he was unable to receive RMA meals. (Complaint at 3B, ¶ 7).

On November 26, 2017, plaintiff requested a personal interview with the Institutional Imam at the CMC. (Complaint at 3B, ¶ 7). The Imam reviewed plaintiff's RMA Dietary Card, processed information into his computer, and sent a facsimile to defendant Jane Doe, the Main Kitchen Food Manager, to affirm that plaintiff should be added to the Institution-approved RMA Dietary List at Facility A. (Comp. at 3B-3C, ¶ 8). Several weeks later, the Imam provided plaintiff with a green "RMA" sticker to facilitate plaintiff's timely receipt of RMA meals which unnamed Facility A dining officers were continuing to deny plaintiff. (Comp. at 3C, ¶ 9).

On an unspecified date thereafter, plaintiff submitted a CDCR-22 request to defendant Warden Gastelo complaining about the denial of RMA meals and requesting her immediate assistance in rectifying the matter. (Comp. at 3C, ¶ 10). Warden Gastelo failed to rectify the matter in a timely manner. (Comp. at 3C, ¶ 11).

On December 7, 2017, plaintiff was assigned as a morning cook and from that date to February 15, 2018 – when plaintiff was finally placed onto the CMC's RMA-approved Dietary list for the institution – he was able to consume some RMA breakfast and lunch meals. (Comp. at 3C, ¶ 13).

On February 8, 2018, plaintiff filed two separate CDCR-22 inmate request forms to defendants Bonnifield and Jane Doe, requesting their immediate assistance with rectifying the failure of Facility A dining hall officers to honor plaintiff's RMA Dietary Card and the green RMA sticker. (Comp. at 3D, ¶¶ 2, 3). On February 20, 2018, plaintiff filed a CDCR-602 inmate grievance regarding the failure of defendants Bonnifield and Jane Doe to timely respond to and assist

plaintiff in receiving the RMA meals. (Comp. at 3D, ¶¶ 18). On March 17, 2018, defendant Bonnifield interviewed plaintiff at the second level of review and partially granted plaintiff's requests to be placed on the approved institutional RMA dietary list. (Comp. at 3D, ¶ 18).

Defendants Stout and John Doe repeatedly denied plaintiff RMA breakfast and lunch meals during the months of November 2017 through March 2018, told plaintiff he was not listed on the institutional approved dietary list, and failed to honor the RMA Dietary Card and green sticker, thereby violating plaintiff's First Amendment right to exercise an obligatory tenet of the Islamic Faith to eat RMA meals. (Comp. at 3D, ¶¶ 14, 15).

Based upon the foregoing, the Complaint alleges four "causes of action" for First Amendment violations of plaintiff's right to religious freedom – the first two of which are against defendant Gastelo and are predicated upon her implementation of the Gastelo Policy (First Claim) (Comp. at 3C, ¶ 12; Comp. at 4) and failure to rectify the failure of her subordinates to ensure that plaintiff was provided with RMA meals after receiving notice thereof (Second Claim) (Comp. at 3C, ¶¶ 10-11; Comp. at 4), the third of which is against defendants Stout and John Doe and is predicated on their failure to provide plaintiff with RMA meals (Third Claim) (Comp. at 3D, ¶ 14; Comp. at 4), and the fourth of which is against defendants Bonnifield and Jane Doe and is predicated on their asserted failure to meet their obligation to rectify the constitutional violations arising from the failure of the dining hall officers to allow plaintiff to exercise an obligatory tenet of the Islamic Faith by ensuring that plaintiff was supplied with RMA meals (Fourth Claim) (Comp. at 3D-3E, ¶¶ 16-19; Comp. at 4).

## III. PERTINENT LAW

### A. The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to

dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Department, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable (*i.e.*, capable of succeeding), the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 135 S. Ct. 346, 347 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation

5

omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting id. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 requirements) (emphasis added). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, *pro se* plaintiffs must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially

pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original).

If a *pro se* complaint is dismissed because it does not state a viable claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

## B. Section 1983 Claims

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. Iqbal, 556 U.S. at 676 (citing, *inter alia*, Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978)). Hence, a government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing id.), cert. denied, 571 U.S. 819 (2013). A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation. See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "Sweeping conclusory allegations [regarding causation] will not suffice . . . ." Id. (citation omitted).

An individual "causes" a constitutional deprivation basically when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he or she (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676). Under the latter theory, even absent "overt personal participation," a supervisor may be liable under Section 1983 if he or she created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his or her subordinates) proximately caused the plaintiff's constitutional injury. OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory officials may be held liable "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation'") (citation and internal quotation marks omitted).

## C. First Amendment – Free Exercise of Religion

Prisoners "retain protections afforded by the First Amendment" including the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq. As a consequence of incarceration, however, a prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001). Thus, an inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

To state a First Amendment free exercise claim, an inmate must allege that a prison official's actions (a) "substantially burden[ed]" the inmate's exercise of a sincerely held religious belief; and (b) did so in an unreasonable manner – *i.e.*, the official's actions were not "rationally related to legitimate penological interests." See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones v. Williams, 791 F.3d at 1033 (citations omitted); see also id. at 1031 (a "substantial burden" must be "more than an inconvenience on religious exercise") (citations omitted).

To determine whether a prison official's actions were a reasonable – rather than an "exaggerated" – response to a legitimate penological interest, courts consider four factors, specifically "(1) Whether there is a valid, rational connection between the prison [official's challenged conduct] and the legitimate governmental interest put forward to justify it; [¶] (2) Whether there are alternative means of

exercising the right that remain open to prison inmates; [¶] (3) Whether accommodation of the asserted constitutional right will impact . . . guards and other inmates, and [] the allocation of prison resources generally; and (4) Whether there is an 'absence of ready alternatives' versus the 'existence of obvious, easy alternatives.'" Shakur, 514 F.3d at 884 (quoting Turner v. Safley, 482 U.S. 78, 89-91 (1987), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, *et seq.*) (other citation and internal quotation marks omitted). When considering the above factors, courts give significant deference to the professional judgment of prison officials in light of the "inordinately difficult" nature of prison administration. Turner, 482 U.S. at 84-85

It is plaintiff's burden to plausibly show that an official did not act in a reasonable manner under the circumstances. See, e.g., Overton v. Bazzetta, 539 U.S. 126, 132 (2003) ("The burden [] is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.") (citing, *inter alia*, O'Lone, 482 U.S. at 350).

## IV. DISCUSSION

First, the Complaint is deficient because multiple paragraphs therein allege that two or more defendants or other unnamed CMC officials (*i.e.*, "dining hall officers") acted collectively to injure plaintiff. (See, e.g., Comp. at 3B, ¶¶ 5-7; Comp. at 3D, ¶¶ 14-17). Such general and conclusory allegations against an indistinguishable group of defendants and others do not demonstrate a causal link between any *individual* defendant's conduct and an alleged constitutional violation, and therefore are insufficient to state a viable Section 1983 claim against any of the defendants. See Baker v. McCollan, 443 U.S. 137, 142 (1979) ("[A] public official is liable under [Section] 1983 only 'if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights.'") (citation omitted; emphasis in original); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983

there must be a showing of personal participation in the alleged rights deprivation[.]"); see also Pena, 976 F.2d at 471 (Vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim under Section 1983) (citing Ivey v. Board of Regents of University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)); see also Iqbal, 556 U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more than a "formulaic recitation of the elements" are insufficient under pleading standard in Fed. R. Civ. P. 8) (citations omitted). To state a viable Section 1983 claim against an individual defendant, plaintiff must, at a minimum, allege facts which demonstrate the <u>specific</u> acts each <u>individual</u> defendant did and how that individual's alleged misconduct <u>specifically</u> violated plaintiff's constitutional rights.

Second, the Complaint does not state a viable Section 1983 claim against defendant Gastelo. As to the First Claim, even assuming defendant Gastelo was responsible for implementing a policy that required her subordinates to commit constitutional violations during the first 30 days after an inmate's arrival at CMC (*i.e.*, the Gastelo Policy), the Complaint does not plausibly allege that enforcement of such policy proximately caused a deprivation of plaintiff's free exercise rights on any specific occasion during the 30-day period following plaintiff's arrival at CMC – November 21 to December 21, 2017. For example, conclusory allegations that on November 22, 2017 – the day after plaintiff arrived at CMC – unspecified "dining hall officers" had "not provided" plaintiff with RMA meals purportedly because plaintiff "was not on the [RMA Diet] List," and that plaintiff had been "unable to receive [RMA meals] for several days thereafter" (Comp. at 3B, ¶¶ 5-7) do not plausibly suggest that plaintiff's inability to obtain RMA meals at that time was proximately caused by the Gastelo Policy *per se*, rather than by one of several other possible circumstances unrelated to enforcement of the policy (*e.g.*, plaintiff's name had not been on the RMA List due to a clerical error, or "dining hall officers" just negligently failed to checked the RMA List before denying

11

plaintiff's request). Indeed, the Institutional Imam allegedly requested that plaintiff be added to the RMA Diet List on November 26, 2017 – just five days after plaintiff was transferred to CMC – which suggests that the Gastelo Policy may not have been enforced at all in plaintiff's situation. (Comp. at 3B-3C, ¶¶ 7-8). While it is also *possible* that CMC dining hall officers denied plaintiff's request for RMA meals because the Gastelo Policy required them to do so, such mere possibility is insufficient to show that enforcement of the Gastelo Policy was the proximate cause of plaintiff's constitutional injury. Similarly, plaintiff's conclusory allegations that "Facility A dining officers were continuing to[] deny plaintiff [RMA meals]" for "several weeks" after the Institutional Imam requested that plaintiff be added to the RMA Diet List (Comp. at 3B-3C, ¶¶ 5-9), do not plausibly suggest otherwise. See Pena, 976 F.2d at 471 (citation omitted); see also Iqbal, 556 U.S. at 680-84.

Plaintiff also fails to state a viable Section 1983 claim against defendant Gastelo based on allegations related to his Second Claim. For example, to the extent plaintiff alleges that defendant Gastelo violated plaintiff's free exercise rights because she failed properly to process plaintiff's inmate grievance(s) (Comp. at 3C, ¶¶ 10-11), such conclusory allegation cannot serve as a basis for Section 1983 liability.[1] See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison

---

[1] While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, the Complaint fails to state such a claim because plaintiff does not plausibly allege that an actual injury resulted from defendant Gastelo's (or any other defendant's) failure to process plaintiff's grievance, or that any such misconduct actually "hindered his efforts to pursue a [nonfrivolous] legal claim." Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996) (To establish any denial of access claim, a plaintiff must show that he suffered an "actual injury" as a result of the defendants' actions.); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.

grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because defendant fails properly to process grievances submitted for consideration), cert. denied, 488 U.S. 898 (1988); see, e.g., Todd v. California Department of Corrections and Rehabilitation, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of [] prison grievances" since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (quoting Ramirez, 334 F.3d at 860) (quotation marks omitted); Shallowhorn v. Molina, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citing Ramirez, 334 F.3d at 860). To the extent the Second Claim reflects that plaintiff is suing defendant Gastelo for generally failing to prevent her subordinates from engaging in the alleged official misconduct (see Comp. at 3C, ¶ 11), plaintiff again fails to state a viable Section 1983 claim. See Taylor, 880 F.2d at 1045 (federal civil rights claim may not be based on defendant's supervisory position alone) (citation omitted).

Third, plaintiff also fails to state a viable Section 1983 claim against defendants Stout and John Doe based on allegations related to his Third Claim. Plaintiff's conclusory allegations that defendants Stout and John Doe "repeatedly denied" plaintiff RMA meals over a period of almost four months (Comp. at 3D, ¶ 14; Comp. at 4), with no mention of the specific date, time, duration, or location of any particular incident during which the specific act or acts of either defendant allegedly placed a substantial and unreasonable burden on plaintiff's sincerely held religious exercise, fails adequately to show a deprivation of plaintiff's First Amendment free exercise rights. Such general and conclusory allegations do not demonstrate a causal link between any *specific* defendant's conduct and a constitutional violation, and therefore are insufficient to state a viable Section 1983

13

claim of any kind.  See, e.g., Twombly, 550 U.S. at 565 n.10 (conclusory allegations which furnish "no clue" as to "specific time, place, or person involved in" alleged misconduct, and which leave defendant "little idea where to begin" when answering, insufficient to state a viable claim under Rule 8 pleading standard); Exmundo v. Kane, 553 Fed. Appx. 742, 743 (9th Cir. 2014) (claims against defendant properly dismissed where allegations in complaint "were unclear as to the timing and nature" of defendant's purported misconduct) (citing, in part, Fed. R. Civ. P. 8(a)); cf. McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) (Rule 8 does not explicitly demand that a complaint allege "when challenged activities occurred" so long as "the dates of the alleged misconduct readily could be ascertained" from the allegations).  Moreover, the Complaint does not plausibly allege that any specific defendant's actions on any particular occasion unreasonably impinged upon the exercise of a religious belief that was *sincerely held* by plaintiff *personally* – a necessary predicate for stating a viable First Amendment free exercise claim.  See Shakur, 514 F.3d at 884 (Free Exercise Clause implicated only where religious belief "sincerely held") (citation omitted).

Fourth, plaintiff also fails to state a viable Section 1983 claim against defendants Bonnifield and Jane Doe based on allegations related to his Fourth Claim.  Plaintiff's claim against defendants Bonnifield and Jane Doe, at best, appears to be predicated upon their failure to process plaintiff's inmate grievances with sufficient swiftness, and/or a general failure to prevent unspecified subordinates from refusing plaintiff's legitimate requests for RMA meals.  (Comp. at 3D-3E, ¶¶ 16-19; Comp. at 4).  Nonetheless, as discussed with respect to defendant Gastelo, such conclusory allegations under either theory, without more, cannot serve as a basis for Section 1983 liability.  See Taylor, 880 F.2d at 1045 (citation omitted); Mann, 855 F.2d at 640; Todd, 615 Fed. Appx. at 415 (citation omitted).

Finally, the Complaint otherwise contains mostly conclusory, and at times

unintelligible, factual assertions which, at most, amount to the "formulaic recitation of the elements" of an asserted civil rights cause of action, and consequently are insufficient to state any viable Section 1983 claim. See Pena, 976 F.2d at 471 (citation omitted); see also Iqbal, 556 U.S. at 680-84 (citations omitted); Knapp v. Hogan, 738 F.3d 1106, 1109-10 & n.1 (9th Cir. 2013) (violations of Rule 8's "short and plain statement" requirement "warrant dismissal") (citations omitted), cert. denied, 135 S. Ct. 57 (2014); Stewart v. Ryan, 2010 WL 1729117, *2 (D. Ariz. Apr. 27, 2010) ("It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims.").

## V. ORDERS

In light of the foregoing, IT IS HEREBY ORDERED that the Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within twenty (20) days of the date of this Order, plaintiff must do one of the following:

1. File a First Amended Complaint which cures the pleading defects set forth herein;[2] or

2. Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

---

[2] The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a First Amended Complaint if he elects to proceed in that fashion. Any First Amended Complaint must: (a) be labeled "First Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original Complaint – i.e., it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each individual defendant did and how that individual's misconduct specifically violated plaintiff's civil rights; and (g) not add defendants or claims without leave of court, cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (civil rights plaintiff may not file "buckshot" complaints – i.e., a pleading that alleges unrelated violations against different defendants).

///

3. File a Notice of Intent to Stand on Complaint, indicating plaintiff's intent to stand on the original Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action in its entirety based upon such defects.

**Plaintiff is cautioned that, absent further order of the Court, plaintiff's failure timely to file a First Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on Complaint may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: June 19, 2019

_____
HONORABLE CHRISTINA A. SNYDER
SENIOR UNITED STATES DISTRICT JUDGE

Attachments